## SARAH A. HAUS v. BOR. OF BETHLEHEM.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 10, 1890—Decided March 31, 1890.

1. If the corporate authorities of a borough, having knowledge thereof, suffer a public culvert, of sufficient capacity in itself, to be extended through private property, reduced, however, to a capacity insufficient to carry the ordinary flow of water, the borough is liable to a property owner for the resulting injuries.

2. In such case, testimony is admissible, on the part of the plaintiff, to show that a former borough officer had made a change in the streets such that the volume of water cast upon the premises was thereby increased, increasing the extent of plaintiff's injuries from the accumulation thereof by reason of the obstruction.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 31 July Term 1879, Sup. Ct.; court below, No. 32 February Term 1887, C. P.

On January 29, 1887, Henry Haus and Sarah A. Haus, his wife, in right of said wife, brought trespass against the borough of Bethlehem. Issue.

At the trial on March 26, 1889, the plaintiffs claimed to recover upon testimony showing, in substance, that Mrs. Haus was the owner of a house and lot on Spruce street, described in the statement of claim; that, some years before the action was brought, the borough had built a culvert connecting with the ends of a narrow county bridge crossing Main street. the culvert being two feet by three feet in size, and sufficient to carry off all the water to pass through it; that the street was then filled about thirteen feet over the culvert and bridge; that Simon Kemerer, an abutting owner, afterward made an arrangement with the borough by which the culvert was extended of the same capacity through 28 feet of his lot, so as to enable him to fill and build a house over it; that for this extension the borough paid for the lime and mason work, Kemerer bearing the remainder of the expense; that Kemerer

Charge of Court below.

then built upon Main street, over the culvert, and afterward extended the culvert through his lot, but reducing its capacity until it was only ten by twelve inches in size ; that C. M. Anstett, owning the adjoining lot, continued the extension, in an irregular course and of the reduced capacity, through his lot ; that after this extension, Anstett's lot being filled up over the culvert, the only way by which the water could descend and pass into the culvert and under the bridge crossing was through the ten by twelve inch opening on Anstett's lot, which was insufficient, causing the water to accumulate and injure the plaintiff's dwelling and garden.

John Smith being called for plaintiff, it was proposed to prove by the witness that in 1880, or 1881, Peter Dech, then supervisor of the borough of Bethlehem, now dead, took out a slate or stone, which diverted the water from Union street and thereby caused the water to flow down New street, increasing the volume of water thrown upon the plaintiff's premises, thereby increasing the amount of her damages; this to be followed by proof that the territory drained by Union street had been built up, and that the population had increased, and that the volume of water was thereby increased from the time it had been originally diverted until the time it was re-conveyed down Union street.

Objected to as incompetent and irrelevant.

By the court: Objection overruled; exception.[7]


At the close of the testimony, the court REEDER, J., after reviewing the facts, charged the jury as follows :

This injury may have been sustained by plaintiff and she have no right to recover damages for it against anybody.

Your first inquiry, therefore, will be, if she has sustained any injury, what was it caused by?  If it was occasioned by the mere inadequacy of the culvert, as constructed by the borough, or by Simon Kemerer for the borough, she would have no right to recover.  Mere inadequacy of capacity in a sewer or drain to carry off the accumulated surface water, and by reason of which property is injured or destroyed, confers no right upon the party suffering the injury to recover damages for it from the municipality.  If, in the construction of a culvert, or sewer, the municipal authorities err in judgment as

### Charge of Court below.

to its proper size for the purpose of its construction, and in consequence of such error of judgment injury is sustained, there can be no recovery in damages from the municipality for such injury. If, however, such culvert or sewer is negligently or faultily constructed, and the injury is a consequence, not of the plan adopted by the municipality for carrying off the water, but of the negligent carrying out of the plan, in constructing the culvert or sewer, then the party injured thereby is entitled to recover in damages for whatever injury he suffers. Suppose, for example, and as an illustration easily to be understood, that the borough of Bethlehem, or the borough of South Bethlehem, should decide to construct a sewer for the purpose of carrying off water, of the dimensions of three feet by two feet, and it should prove inadequate and insufficient in capacity to carry off the water accumulating in the locality which it was designed for and which it was intended to carry off, and that property owners were damaged because of the insufficiency of the sewer to carry off the · water, yet they could not recover. But they could recover if the damage resulted from negligent or faulty construction of the sewer.

After the municipal authorities, however, have constructed a sewer they are bound to see that it is kept open and unobstructed. If they should permit it to be closed by a private individual, and they know that the orifice or opening of the sewer is closed by such private person, and they do not remove the obstruction so as to permit the free ingress of the accumulated water into the opening of the sewer, and damages result to anybody by reason of such omission, then they would be liable in damages for whatever injury might be sustained. And it makes no difference whether the obstruction is an obstruction of the entire opening to the sewer, or whether it closes the opening of the sewer only partly; in either case, the borough would be liable.

So, if injury result from the action of any private person in obstructing a sewer, so long-continued that the municipal authorities should have taken notice of it, or knew of it, the municipality would be liable in damages for the injury sustained by such obstruction. Nor would it matter whether the orifice were closed by a direct obstruction placed immediately in front of the orifice, or whether it was closed by a prolongation of the

Charge of Court below.

sewer which narrowed towards its orifice, or whether it was closed by reason of the continuation of a sewer narrower at some points and larger at others, so that the quantity of water flowing through the extension of the sewer was much less than that flowing through the sewer as originally constructed by the borough, and such limitation of the flow of water caused injury, the borough would nevertheless be obliged to pay damages for any injury suffered by such extension so constructed.

[Therefore, to make the application of the legal principles, to which I have just referred, to the facts in this case, if you find, from the evidence, that the addition or extension put to this sewer, or culvert, by Christian M. Anstett, checked the flow of water so that it was reduced in quantity below that which flowed through the part to which he joined, and if by reason of such lessening of the capacity of the sewer, or by reason of making the mouth of the sewer smaller, or by reason of faulty methods in constructing the mouth of the sewer, and the borough authorities knew of it and permitted it so to remain, and injury resulted from such construction, even though it was the construction of a private citizen, still the borough would be responsible in damages for whatever injury resulted from such construction.] [3]

If you find that it was the method by which this sewer was constructed by Christian M. Anstett, or the method by which it was attached to the borough's sewer, that caused this damage by reason of its lessening materially the capacity of the sewer to carry off the accumulated surface water that ran into this gully, and that that caused this injury to this plaintiff, she would be entitled to recover for whatever injury she sustained, provided the borough authorities knew of, or if their attention was called to the existence of this faulty or imperfect construction, if there were such, limiting the capacity of the original sewer, or if it was so long-continued as to be observable by anybody who might make an examination of it.

There is a presumption, if it is of a visible, open, and notorious character, that the borough council did know of it. [Therefore, if you find that the construction of this extension to the sewer by Christian M. Anstett narrowed its capacity, and that the narrowing of its capacity was the cause of this injury, and that it was so long-continued as to be open, and visible,

and notorious, then there is a presumption of knowledge on the part of the borough council. If it was not so long-continued as to be open, visible and notorious, and yet actual attention was called to, the direct attention of the borough council called to its existence, then, of course, they had actual knowledge; and if they knew of it, and did not rectify it, and injury resulted, the municipality is liable in damage for whatever injury this plaintiff may have sustained in consequence.] [4]. . . . .

[There is some testimony going to show that Goepp street was at that time used as a public dumping ground, and that large quantities of debris were dumped about there. Some of the witnesses say that it was dumped within the street lines. There is but one witness who says that it may have been dumped, part of it, within the building line. The other witnesses, who have testified upon this point, say that the dumping was done in the street line, and that some of it rolled on to the lots within the building line. If the debris dumped there was of such a character as to make it probable that the ordinary rains, which we may expect here during certain seasons of the year, would carry that debris into this ravine or gully, and that it would be carried by the force of the current of the water into this sewer and obstruct it, and that that is what did happen, and that that is what caused the overflow of the water upon the property of the plaintiff, and she was injured thereby, then she would be entitled to recover damages for whatever injury she may have sustained.] [6]

The defendant has requested the court to charge:

1. Under all the evidence the verdict must be for the defendant.

Answer: This point I deny. [1]

2. The plaintiff cannot recover unless the jury is satisfied from the weight of the evidence that the injury to plaintiff's property was caused by the negligence of defendant.

Answer: This point I affirm.

3. If the jury believe that the damage to plaintiff was caused by the unskilful or negligent construction of the private culvert upon private property, although connected with the defendant's public culvert, then the plaintiff cannot recover.

Answer: This point I deny. [2]

4. If the jury believe that the proximate cause of the injury

Arguments.

to plaintiff's property was the obstruction of the culvert by the washing down from the banks of the gully of rubbish or debris deposited there by private individuals, then the plaintiff cannot recover.

Answer: This point I deny.[5]

5. The plaintiff cannot recover more than such actual damages as she has shown by competent evidence to have sustained by reason of the negligence of the defendant.

Answer: This point I affirm.

6. The jury cannot guess at the amount of damages suffered by the plaintiff, and the fact that the plaintiff claims damages in a round sum, does not warrant the jury in allowing such amount, unless she has shown to the satisfaction of the jury that she has actually sustained such damages by reason of the negligence of the defendant.

Answer: This point I affirm.

—The jury returned a verdict for the plaintiffs for $250. Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The answers to defendant's points.[1] [2]

3, 4. The portions of the charge embraced in [ ] [3] [4]

5. The answer to defendant's point.[5]

6. The portion of the charge embraced in [ ] [6]

7. The admission of plaintiff's offer.[7]

*Mr. Robert L. Cope*, for the appellant.

Counsel cited: Dillon on Mun. Corp., §§ 1039, 1042; Wood on Nuisances, 308, 311; Munn v. Pittsburgh, 40 Pa. 364; West Chester Bor. v. Apple, 35 Pa. 284; Fair v. Philadelphia, 88 Pa. 309; Carr v. Northern Liberties, 35 Pa. 324; Rapho v. Moore, 68 Pa. 404; Otto Tp. v. Wolf, 106 Pa. 608; Allegheny v. Zimmerman, 95 Pa. 287; Penna R. Co. v. Kerr, 62 Pa. 353.

*Mr. Wm. C. Loos*, for the appellees.

Counsel cited: Dillon on Mun. Corp., §§ 1078, 1079; Rauch v. Lloyd, 31 Pa. 358; Norristown v. Moyer, 67 Pa. 362; Erie City v. Schwingle, 22 Pa. 385; Pittsburgh v. Grier, 22 Pa. 54; Huddleston v. West Bellevue Bor., 111 Pa. 110; Miller v. Laubach, 47 Pa. 154; Fritsch v. Allegheny City, 91 Pa. 226;

Kibele v. Philadelphia, 105 Pa. 41; Philadelphia v. Smith, 23
W. N. 242; Vanderslice v. Philadelphia, 103 Pa. 107.

OPINION, MR. JUSTICE STERRETT:

It was not denied that the plaintiff below was considerably
damaged by water which accumulated on her premises, in con-
sequence of the obstruction of the drain or sewer through which
it should have been discharged, but it was contended on behalf
of the borough authorities that the injury complained of was
not the result of their negligence. Under the evidence before
the jury, it became an issue of fact whether the property of
plaintiff below was injured in consequence of the borough's
negligence. In affirming the second, fifth, and sixth points of
defendant below, the learned judge of the Common Pleas in-
structed the jury, in substance, that the plaintiff could not re-
cover unless they were satisfied from the weight of the evidence
that the injury to her property was caused by the negligence of
the defendant corporation; that the jury could not guess at the
amount of damages suffered by the plaintiff, but must ascertain
the same to their own satisfaction, from the evidence before
them; and that in no event could she recover more than such
actual damages as she proved, by competent evidence, that she
sustained by reason of the defendant's negligence.

Assuming, as we must, that the jury obeyed the above and
similar instructions, their verdict in favor of the plaintiff below
necessarily determined all the controlling questions of fact in
her favor, and against the defendant. Moreover, the evidence
was such as necessarily carried the case to the jury, and war-
ranted them in finding as they did. It follows that the learned
judge was right in refusing to charge as complained of in the
first specification, viz., that, "under all the evidence, the ver-
dict must be for the defendant."

The defendant's third and fourth points, recited in the second
and fifth specifications, were also rightly refused. The third
point could not have been affirmed without ignoring evidence
tending to show that the private culvert therein referred to was
constructed with the knowledge and assent of the borough au-
thorities, and that they negligently and carelessly permitted it
to be improperly constructed, and allowed it to remain in that
condition with knowledge that damage was likely to result

therefrom to the plaintiff and other adjacent property owners. For similar reasons the fourth point could not have been affirmed as presented.

The subjects of complaint in the third, fourth, and sixth specifications are portions of the general charge recited therein, respectively. They are not sustained. The charge, as a whole, was a fair and impartial presentation of the case to the jury, with such instructions as were clearly suggested by the evidence.

There was no error in admitting the offer of evidence referred to in the seventh and last specification. We find nothing in the record that warrants a reversal of the judgment.

Judgment affirmed.

On May 5, 1890, a motion for a re-argument was refused.